## S11A0927. CLOUD v. THE STATE.

(719 SE2d 477)

HINES, Justice.

Joe Elvin Cloud appeals his convictions for the malice murder of Rocky Heard ("Rocky"), the aggravated assault of Ray Dean Heard ("Ray Dean"), possession of a firearm during the commission of the crime of aggravated assault, affray, and simple battery.[1] For the reasons that follow, we affirm in part and vacate in part.

Construed to support the verdicts, the evidence showed that on August 29, 2005, Cloud was driving his pickup truck, in which a business associate, Mike Maugeri, was a passenger. Cloud nearly had a collision with a vehicle driven by the wife of Ray Dean, in which their daughter, Courtney Heard ("Courtney"), was a passenger. Courtney made an obscene gesture toward Cloud, which he returned. Cloud entered a parking lot, and the Heards followed. Cloud exited his truck and approached the Heards' vehicle; angry words were exchanged, and Cloud reached into the Heards' vehicle and slapped Courtney on the face. Courtney's mother went into a restaurant to telephone law enforcement officers, and Cloud drove away, leaving Maugeri behind.

Ray Dean learned of the incident later that day, and sought out Cloud, going to Maugeri's home and contacting a relative of Cloud's, but was unable to locate him. Ray Dean said that he was going to "put some knots on [Cloud's] head," that he had "slapped the wrong man's daughter."[2] That same day, Cloud turned himself in to law

---

[1] The shootings occurred on August 31, 2005. On October 25, 2005, a Miller County grand jury indicted Cloud for malice murder, felony murder while in the commission of aggravated assault upon Rocky Heard, the felony murder of Rocky Heard while in the commission of aggravated assault upon Ray Dean Heard, the aggravated assault of Rocky Heard, the aggravated assault of Ray Dean Heard, possession of a firearm during the commission of a crime, and two counts of affray; he was also indicted for one count of simple battery for slapping Courtney Heard on August 29, 2005. Cloud was tried before a jury January 31-February 3, 2006, and was found not guilty of one count of affray, and guilty of all other charges. On March 6, 2006, the trial court sentenced Cloud to life in prison for malice murder; a term of 20 years in prison for the aggravated assault of Rocky Heard, with 10 of those years to be served consecutively to the life sentence; a term of 20 years in prison for the aggravated assault of Ray Dean Heard, with 10 of those years to be served concurrently with the sentence for the aggravated assault of Rocky Heard; five years in prison for possession of a firearm during the commission of a crime, to be served consecutively to the life term; twelve months in prison for affray, to be served concurrently with the life term; and twelve months in prison for simple battery, to be served concurrently with the life term. The guilty verdicts for the felony murders stood vacated by operation of law. Malcolm v. State, 263 Ga. 369, 371-374 (4) (434 SE2d 479) (1993). On March 22, 2006, Cloud moved for a new trial, and amended his motion on April 5, 2010. The motion as amended was denied on November 4, 2010, and Cloud filed a notice of appeal on November 15, 2010, which he amended on January 24, 2011; his appeal was docketed in this Court for the April 2011 term, and submitted for decision on the briefs.

[2] Maugeri testified that Ray Dean said that he was going to "f'ing kill [Cloud]," and said

enforcement officers, who arrested him for the slapping incident; one officer opined that it might be best for Cloud to spend the night in jail and allow Ray Dean to "cool off," and advised Cloud that Ray Dean might "beat" him if they met. Cloud asked this officer to offer an apology to Ray Dean on his behalf; the officer telephoned Ray Dean's home and spoke with his wife. Cloud, in his home county, secured a "no trespass notice" from the sheriff that was served upon Ray Dean.

On the morning of August 31, 2005, Ray Dean drove his vehicle, in which Rocky and Ray Dean's employee, John Easom, were passengers, to a convenience store that also served as a gas station, and parked outside the store. The three men went into the store and, after a few minutes, Cloud drove his truck, with Maugeri as a passenger and pulling a utility trailer, next to the gas pumps, and stopped. Rocky and Ray Dean recognized Maugeri, saw that Cloud's truck resembled the one involved in the incident with Courtney, and concluded that Cloud was the man who slapped her. Easom exited the store and went to Ray Dean's vehicle. Cloud began to pump gas, and Maugeri went inside the store. Ray Dean and Rocky exited the store and went to Ray Dean's vehicle; as they walked, Cloud stared at Ray Dean. Ray Dean, while walking, said that he knew who Cloud was, and that "one day" he would "put some knots on" Cloud's head. In profane terms, Cloud asked why the present day would not suffice.[3] Ray Dean went to Cloud, and Rocky followed; Rocky got in front of Ray Dean, pushed him back toward Ray Dean's vehicle, and the two men began walking in that direction. As they did, Cloud made a remark about Courtney and Ray Dean's wife, and Ray Dean returned and hit Cloud; he and Rocky quickly overpowered Cloud and delivered several blows to him with their hands and feet. Easom told them to stop, and Ray Dean and Rocky began walking back to Ray Dean's vehicle. As they did, Cloud produced a shotgun.[4] Easom and Rocky shouted warnings, and the three men ran, Rocky and Ray Dean toward Ray Dean's vehicle and Easom in the opposite direction. Cloud fired, shooting Rocky in the back as he reached the rear of Ray Dean's vehicle on the passenger side, which was 30 to 50 feet from Cloud; Rocky died at the scene a few minutes later. Cloud then fired a second shot, which struck Ray Dean's vehicle on the driver's side window; Ray Dean had positioned himself so that his vehicle was between him and Cloud, and he was not struck by any shot. Cloud was then persuaded by Easom and a bystander to put the shotgun

---

this in front of police officers, but the two officers at the scene testified that this was not so.

[3] In his statement to police, Cloud admitted that he "may not should have egged that on."

[4] Cloud did not ordinarily have a shotgun in his truck, but had placed one there after the encounter with Courtney.

down; law enforcement personnel soon arrived and secured the area.

At trial, Cloud argued that he was justified in firing the two shots as he had been defending himself.

1. The evidence was sufficient to enable a rational trier of fact to find Cloud guilty beyond a reasonable doubt of all the crimes of which he was convicted. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979). However, Cloud was sentenced for the malice murder of Rocky, the aggravated assault of Rocky by discharging a shotgun at him, and the aggravated assault of Ray Dean by discharging a shotgun at him. Review of the record reveals that the conviction for the aggravated assault of Rocky merged into the malice murder conviction as a matter of fact.[5] See *Malcolm v. State*, 263 Ga. 369, 372-374 (5) (434 SE2d 479) (1993). Accordingly, the separate judgment of conviction and sentence for the aggravated assault of Rocky must be vacated. See *Nix v. State*, 280 Ga. 141, 142 (2) (625 SE2d 746) (2006).

2. Cloud sought to introduce evidence of prior acts of violence by Rocky and Ray Dean against third parties. Cloud contends that the trial court erred in ruling that Cloud had not met his burden for the introduction of such evidence.

> Evidence of a victim's specific acts of violence against third parties is admissible when a defendant claims justification and makes a prima facie showing thereof, follows procedural requirements, and establishes the existence of the prior violent acts by competent evidence.

*Arnold v. State*, 286 Ga. 418, 419 (2) (687 SE2d 836) (2010) (Citations and punctuation omitted.).

> To make a prima facie showing of justification so as to allow evidence of violent acts by the victim against third parties, "the defendant must show that the victim was the aggressor, the victim assaulted the defendant, and the defendant was honestly trying to defend himself." [Cit.]

*Stobbart v. State*, 272 Ga. 608, 610 (2) (533 SE2d 379) (2000). This is in accordance with "[t]he general rule . . . that the character of a victim is not admissible because it is as unlawful to kill a violent person as to kill a non-violent person. [Cit.]" *Chapman v. State*, 258

---

[5] Cloud's first shot struck Rocky, and was the basis for the malice murder conviction. Although Rocky was still alive at the time of the second shot, Cloud's own testimony, his statement to investigating law enforcement officers, and the physical evidence established that he directed that shot at Ray Dean.

Ga. 214, 215 (2) (367 SE2d 541) (1988).

The trial court specifically found that Cloud had not met his burden to show that he was honestly trying to defend himself. This was not error. Cloud asserts that he fired because he did not know why the victims were running to their vehicle and that they could have been returning to it to secure a weapon. However, there was no evidence that the victims had any sort of weapons upon their persons, or in their vehicle, and Cloud certainly had not seen any weapon. Compare *Stobbart*, supra. Justification cannot be based on an assault which has ended, *Collier v. State*, 288 Ga. 756, 757 (2) (707 SE2d 102) (2011), and the mere fact that assailants are departing and could, theoretically, return and continue an assault does not mean that the person asserting justification is in imminent danger. Id. See also *Carter v. State*, 285 Ga. 565, 566 (2) (678 SE2d 909) (2009); *Quillian v. State*, 279 Ga. 698, 700 (2) (b) (620 SE2d 376) (2005). Cloud did not get his shotgun and hold it at the ready in case the men got weapons and returned, but shot at them as they fled. Although the video recordings from the surveillance cameras at the convenience store do not show the area where Cloud was beaten, and from which he fired, recordings do show the victims walking away from where Cloud was, and then suddenly running. Testimony, and Cloud's statement to investigating law enforcement personnel, established that the Deans began running at a time that coincided with Cloud's production of the shotgun. The trial court did not clearly err by denying the introduction of the evidence that Cloud sought. See *Arnold*, supra.

3. Citing *Edge v. State*, 261 Ga. 865 (414 SE2d 463) (1992), Cloud contends that the trial court erred by instructing the jury in a manner that prevented full consideration of voluntary manslaughter as an alternative to malice or felony murder.

> Our holding in *Edge* disapproved use of the "sequential charge" in those cases where the jury's task is to determine if the homicide is felony murder or voluntary manslaughter. In such a case the "sequential" charge prevents the jury from fully considering voluntary manslaughter, because if the jury determines that the defendant committed felony murder, "it would not then go on to consider evidence of provocation or passion which might authorize a verdict for voluntary manslaughter." [Cit.]

*Terry v. State*, 263 Ga. 294, 295 (430 SE2d 731) (1993). No "sequential charge" was given here. Further, Cloud was convicted of malice murder and " 'there can be no harmful *Edge* violation when the jury convicts on a malice murder charge.' [Cit.]" *Roscoe v. State*, 288 Ga.

775, 776 (2) (707 SE2d 90) (2011). In any event, the jury clearly understood that it was empowered to consider voluntary manslaughter as an alternative to the murder charges, and not "only if" it failed to find felony murder; during deliberation, the jury requested that it be instructed on the law of malice murder "compared to" voluntary manslaughter, and the court repeated the definitions of the two crimes.[6] See *Head v. State*, 262 Ga. 795, 799 (5) (426 SE2d 547) (1993).

4. Cloud claims that his trial counsel failed to provide effective representation by not advising him of his right not to testify at trial. In order to prevail on this claim, he must show both that counsel's performance was deficient, and that the deficient performance was prejudicial to his defense. *Smith v. Francis*, 253 Ga. 782, 783 (1) (325 SE2d 362) (1985), citing *Strickland v. Washington*, 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984). To meet the first prong of the required test, he must overcome the "strong presumption" that counsel's performance fell within a "wide range of reasonable professional conduct," and that counsel's decisions were "made in the exercise of reasonable professional judgment." Id. The reasonableness of counsel's conduct is examined from counsel's perspective at the time of trial and under the particular circumstances of the case. Id. at 784. To meet the second prong of the test, he must show that there is a reasonable probability that, absent any unprofessional errors on counsel's part, the result of his trial would have been different. Id. at 783. " 'We accept the trial court's factual findings and credibility determinations unless clearly erroneous, but we independently apply the legal principles to the facts.' [Cit.]" *Robinson v. State*, 277 Ga. 75, 76 (586 SE2d 313) (2003).

"Whether to testify in his own behalf is a decision for a defendant to make after full consultation with counsel. [Cit.]" *Hamilton v. State*, 274 Ga. 582, 589 (13) (555 SE2d 701) (2001). Counsel testified during the hearing on the motion for new trial that, the day before Cloud testified at trial, counsel did not wish him to do so, but that upon consideration of the testimony of a certain witness, counsel believed that Cloud needed to testify in order to rebut the implication that Cloud had been waiting near the gas station in order to provoke a confrontation with the Heards; the next morning, in light of that testimony, counsel told Cloud that he thought Cloud needed to testify, and Cloud responded with words something like "whatever you think best." Counsel also testified that, although he

---

[6] Similarly, the verdict form showed voluntary manslaughter as an alternative to each of the murder charges, and in no way suggested the improper "sequential" consideration disapproved in *Edge*.

had no specific recollection of informing Cloud that the right to decide whether to testify or not was Cloud's, counsel was "sure" and had "no doubt" that he had done so. Counsel further testified that such was his practice when representing criminal defendants, and that in "every case," he informed his clients that he worked for them, and that the "decisions on the evidence" were ultimately to be made by them.[7]

Cloud testified that counsel never told him that it was his decision whether to testify, and that he believed counsel would make that decision; on cross-examination, Cloud stated that he could not be positive that counsel had not, in fact, advised him that the decision whether to testify was his. Further, at trial, Cloud testified that the decision that he testify had only been made that morning, and that in meeting with counsel the previous night "[w]e decided not to." The trial court specifically found that Cloud failed to present any credible evidence that counsel failed to advise him that the decision to testify was his. The trial court did not err in determining that Cloud was advised of his right not to testify. See *Robinson*, supra.

*Judgments affirmed in part and vacated in part. All the Justices concur.*

DECIDED NOVEMBER 29, 2011.

*Pate & Brody, Page A. Pate, Bernard S. Brody,* for appellant.
*Thomas C. Earnest, District Attorney, Ronald S. Smith, Assistant District Attorney, Samuel S. Olens, Attorney General, Paula K. Smith, Senior Assistant Attorney General, David A. Zisook, Assistant Attorney General,* for appellee.

---

[7] Counsel also testified that he was surprised to find that the trial transcript did not contain a recitation of the court's advising Cloud regarding his right to testify or not, as the judge who presided over the trial "always" did that in criminal cases.