## S12A1527. SLAUGHTER v. THE STATE.
### (740 SE2d 119)

NAHMIAS, Justice.

Christopher Slaughter was convicted of malice murder and other crimes in connection with the shooting death of Aikeem Hall. He appeals, arguing that the trial court abused its discretion in refusing to admit evidence of the victim's prior violent acts and of provocation and that the trial court erred in finding Appellant competent to stand trial. We affirm the judgment below except for Appellant's sentence for aggravated assault for shooting Hall in the leg, which we vacate because the conviction for that offense merged with his murder conviction.[1]

---

[1] The victim was killed on October 5, 2009. On November 2, 2009, Appellant was indicted in Hall County for malice murder, felony murder, aggravated assault for shooting Hall in the chest, aggravated assault for shooting Hall in the leg, and two counts of possession of a firearm during the commission of a crime. After a bench trial on November 29, 2011, the trial court found that Appellant was competent to stand trial. On December 5-8, 2011, he was tried before a jury, which convicted him of all charges. On December 9, 2011, the trial court sentenced Appellant to life in prison for malice murder; a concurrent 20-year probationary term for aggravated assault for shooting Hall in the leg; five years on probation for the first firearm conviction,

1. The evidence at trial, viewed in the light most favorable to the verdict, showed the following. On the evening of October 5, 2009, Appellant and his friend Chaquan Jenkins were walking around the apartment complex where Appellant lived with Maukeda Birdette and their child. Appellant told Jenkins that he was going to kill Aikeem Hall, a friend of Jenkins who was also Birdette's second cousin. Appellant had long been friends with Hall as well, but they had a falling out two weeks earlier.

Appellant and Jenkins ran into Hall, who shook Jenkins's hand before turning to Appellant and asking him, "Why you been acting like a bi*ch lately?" Appellant then reached into his pocket, pulled out a gun, and shot Hall in the chest. Hall, who was unarmed, attempted to flee but fell to the ground. Hall yelled at Appellant to stop shooting, but Appellant kept firing, striking Hall once more in the leg as he emptied his gun. Appellant then fled, telling several eyewitnesses as he ran by, "You didn't see anything."

Hall died from his chest wound. A bullet removed from Hall's body and two other bullets found at the scene were matched to the gun that Appellant threw into a trash can as he fled, and Appellant's fingerprint was found on the gun's magazine.

Appellant was arrested the next day and spoke to the police after waiving his *Miranda* rights. In a recorded interview played at trial, Appellant at first denied shooting Hall, claiming that his only role was taking the gun from a shooter (whose name he made up) and disposing of it. Appellant eventually admitted, however, that he was the shooter and claimed that he acted in self-defense. Appellant blamed Hall for spreading rumors that he was gay and said that Hall had threatened him and stolen money from him. But Appellant also admitted that he had a temper and that he was mad when he continued shooting at Hall after the first shot. At trial, Appellant did not dispute that he shot Hall, arguing instead that the State failed to disprove that he shot Hall in self-defense and that his crime was mitigated by provocation.

The evidence presented at trial and summarized above, viewed in the light most favorable to the verdict, was sufficient to authorize

consecutive to the life sentence; and five years on probation for the second firearm conviction, consecutive to the other firearm sentence. The court correctly recognized that the felony murder conviction was vacated by operation of law and that the aggravated assault conviction for shooting Hall in the chest merged with the malice murder conviction. On December 27, 2011, Appellant filed a motion for new trial, which he amended on March 30, 2012. Appellant elected not to present evidence on the motion, and the parties submitted briefs to the trial court, which summarily denied the motion on April 10, 2012. Appellant filed a notice of appeal, and the case was docketed in this Court for the September 2012 term and submitted for decision on the briefs.

a rational jury to find Appellant guilty beyond a reasonable doubt of the crimes for which he was convicted. See *Jackson v. Virginia*, 443 U. S. 307, 319 (99 SC 2781, 61 LE2d 560) (1979). See also *Vega v. State*, 285 Ga. 32, 33 (673 SE2d 223) (2009) (" 'It was for the jury to determine the credibility of the witnesses and to resolve any conflicts or inconsistencies in the evidence.' " (citation omitted)). However, the trial court should have merged, as a matter of fact, Appellant's conviction for aggravated assault for shooting Hall in the leg into his malice murder conviction. When multiple injuries are inflicted on a single victim in quick succession and the defendant is convicted of both aggravated assault and murder, deciding whether there was aggravated assault independent of the fatal assault requires the court to consider "both the order and timing of the assaults." *Sears v. State*, 292 Ga. 64, 73, n. 7 (734 SE2d 345) (2012). This Court has repeatedly held that convictions and sentences for aggravated assault and malice murder (or felony murder) merged when a fatal injury preceded the infliction of a non-fatal injury and the injuries were not separated by a " 'deliberate interval.' " *Reddings v. State*, 292 Ga. 364, 367 (738 SE2d 49) (2013) (quoting *Coleman v. State*, 286 Ga. 291, 295 (687 SE2d 427) (2009)). See also *Alvelo v. State*, 290 Ga. 609, 611-612 (724 SE2d 377) (2012) (merging aggravated assault conviction with malice murder conviction due to "the absence of evidence that the victim suffered a non-fatal injury prior to a deliberate interval in the attack upon him, and a fatal injury thereafter").[2] As in those cases, in this case the interval between the victim's injuries was minimal, and the fatal gunshot wound to the victim's chest preceded the non-fatal gunshot wound to his leg. Accordingly, Appellant's conviction for aggravated assault for shooting the victim in the leg merged with his malice murder conviction, and Appellant's sentence for that aggravated assault must be vacated.

2. Appellant contends first that the trial court abused its discretion in excluding evidence of prior acts of violence by Hall against third parties. We disagree.

---

[2] By comparison, where a non-fatal injury preceded a fatal injury and there was a deliberate interval between the injuries, we have regularly held that separate convictions for the initial assault and the fatal assault did not merge. See *Coleman*, 286 Ga. at 295 (citing multiple cases). We do not foreclose the possibility that, under the facts of a particular case, a non-fatal assault that followed a fatal assault by a meaningful interval could be deemed independent of the fatal assault and therefore capable of supporting a separate conviction for aggravated assault or battery. See, e.g., *Drane v. State*, 265 Ga. 255, 260 (455 SE2d 27) (1995) (holding that murder and aggravated battery were independent acts and those convictions did not merge where Drane's accomplice fatally shot the victim and moments later either Drane or the accomplice slashed the victim's throat).

At the time Appellant was tried, evidence of a victim's specific acts of violence against third parties was admissible if a defendant claimed and made a prima facie showing of justification. See *Cloud v. State*, 290 Ga. 193, 195 (719 SE2d 477) (2011).[3]

> To make a prima facie showing of justification so as to allow evidence of violent acts by the victim against third parties, "the defendant must show that the victim was the aggressor, the victim assaulted the defendant, and the defendant was honestly trying to defend himself."

Id. (citations omitted). We review the trial court's decision to exclude evidence of a victim's acts of violence against third parties only for abuse of discretion. See *Smith v. State*, 292 Ga. 316, 318 (737 SE2d 677) (2013).

Appellant sought to present evidence of a violent encounter between Hall and third parties less than a year before he shot Hall. The trial court excluded this evidence on the grounds that Appellant failed to show that Hall assaulted him and that Appellant was honestly trying to defend himself. The record supports these holdings. Accordingly, the trial court did not abuse its discretion in determining that Appellant failed to make a prima facie showing of justification and excluding this evidence.[4]

3. Appellant next claims that the trial court abused its discretion in excluding testimony by his investigator that he asserts was relevant to the issue of provocation. Even assuming that the testimony at issue was relevant in showing provocation, but see *Brooks v. State*, 249 Ga. 583, 586 (292 SE2d 694) (1982) (holding that a

---

[3] Appellant was tried in 2011, so Georgia's new Evidence Code does not apply to this case. See Ga. L. 2011, p. 99, § 101 ("This Act shall become effective on January 1, 2013, and shall apply to any motion made or hearing or trial commenced on or after such date."). We note that Professor Milich asserts that "[p]re-2013 Georgia law allowed the defendant to prove specific prior violent acts by the victim to show the victim's propensity to violence. *Chandler v. State*, 261 Ga. 402 (405 SE2d 669) (1991). This has changed under the new rules." Paul S. Milich, Georgia Rules of Evidence, § 11:5 n.11 (2012-2013 ed.). But we need not address any such change to decide this case.

[4] Appellant's reliance on *Johnson v. State*, 266 Ga. 380 (467 SE2d 542) (1996), and *Bennett v. State*, 298 Ga. App. 464 (680 SE2d 538) (2009), is misplaced. *Johnson* involved a claim of ineffective assistance of trial counsel based on counsel's failure to file the required pretrial notice that would allow him to even attempt to present evidence of prior violent acts by the victim against third parties. See 266 Ga. at 381-383. The opinion in *Johnson* does not even mention the three elements of a prima facie showing of justification. *Bennett* relied on *Johnson*, erroneously stating that this Court had found there that a prima facie showing of justification had been made and concluding a fortiori that Bennett's showing was sufficient because it was stronger than the showing in *Johnson*. See 298 Ga. App. at 465-466. In addition, we disagree with Appellant's assertion that this case is factually similar to those cases.

provocation defense generally cannot be based on insults), the testimony was properly excluded, and its exclusion was harmless in any event.

(a) When Appellant's investigator testified that Maukeda Birdette had told him that Hall had called Appellant a "f*gg*t," the State objected on the ground that Birdette had not been asked during her testimony earlier in the trial whether she made such a statement to the investigator. Our review of Birdette's testimony confirms that point. Accordingly, the trial court correctly sustained the objection. See *Hall v. Lewis*, 286 Ga. 767, 779 (692 SE2d 580) (2010) (holding that former OCGA § 24-9-83 required that the witness be confronted with the substance of the alleged prior inconsistent statement before she could be impeached with it).[5]

In any event, the jury heard the investigator's testimony, and there was no motion to strike it. Moreover, Birdette had admitted on cross-examination that she told the investigator that Hall was spreading a rumor that Appellant was gay. Thus, any error in sustaining the State's objection would be harmless.

(b) After the trial court sustained the State's objection to the defense investigator's testimony that Birdette had told him that Hall called Appellant a "f*gg*t," Appellant requested the opportunity to proffer further testimony by the investigator. After the jury was excused, Appellant proffered testimony by the investigator that Jenkins had told the investigator that Jenkins had told Appellant that Hall had called him "a f*gg*t, a b*tch, and a punk."

Appellant contends that the trial court erred in excluding this testimony. As with Birdette, however, a review of Jenkins's trial testimony confirms that he had not been asked whether he made such a statement to the investigator. Accordingly, the proffered testimony

---

[5] At the time of Appellant's trial, OCGA § 24-9-83 provided as follows regarding the admission of extrinsic evidence of prior inconsistent statements by a testifying witness:

> A witness may be impeached by contradictory statements previously made by him as to matters relevant to his testimony and to the case. Before contradictory statements may be proved against him, . . . the time, place, person, and circumstances attending the former statements shall be called to his mind with as much certainty as possible. . . .

This provision has been replaced with respect to extrinsic evidence by OCGA § 24-6-613 (b) of the new Evidence Code, which states:

> [E]xtrinsic evidence of a prior inconsistent statement by a witness shall not be admissible unless the witness is first afforded an opportunity to explain or deny the prior inconsistent statement and the opposite party is afforded an opportunity to interrogate the witness on the prior inconsistent statement or the interests of justice otherwise require.

We note that Professor Milich also suggests that Georgia law has been materially changed in this regard, see Paul S. Milich, Courtroom Handbook on Georgia Evidence 392 (2012 ed.), but we again do not need to address any such change in deciding this case.

was inadmissible. See *Hall*, 286 Ga. at 779. And again, any error in excluding this testimony would be harmless in any event, since Jenkins had testified that Hall called Appellant a "b*tch" to his face immediately before the shooting, stated that he told Appellant that Hall said that he was going to slap Appellant the next time he saw him, and admitted telling the defense investigator that Hall was one of the people spreading the rumor that Appellant was gay.

4. Appellant finally contends that the trial court erred in finding him competent to stand trial after the bench trial on competency. See OCGA § 17-7-130 (b) (2).

> The constitutional test for competency [is] whether the defendant is capable of understanding the nature and object of the proceedings, . . . comprehends his own condition in reference to such proceedings[,] and . . . is capable of rendering his counsel assistance in providing a proper defense.

*Sims v. State*, 279 Ga. 389, 390 (614 SE2d 73) (2005). The question on appeal is whether, "after reviewing the evidence in the light most favorable to the State, a rational trier of fact could have found that the defendant failed to prove by a preponderance of the evidence that he was incompetent to stand trial." Id. at 391.

Appellant's claim rests primarily on testimony by the defense's forensic psychology expert that because of Appellant's low I.Q. and his religious delusions regarding the trial and the legal process, he lacked a rational understanding of the nature and object of the proceedings and his role in them and was incapable of assisting his attorneys in mounting a defense. Appellant also cites testimony from two family members about the family history of mental illness, Appellant's behavioral problems as a child, and his delusional thinking while awaiting trial, as well as testimony by his lead counsel regarding the difficulties his attorneys had encountered in working with him.

However, there was also substantial testimony from the State's forensic psychology expert that Appellant understood in detail the nature and object of the proceedings and his role in them and that Appellant was able, if not always inclined, to assist his attorneys. In addition, three jailers testified that Appellant's daily interactions with others appeared to be normal. And even the defense's expert conceded that Appellant knew the names and functions of those involved in the trial process, could recall and relate facts pertaining to his actions and whereabouts at the time of the shooting, and knew what was expected of him at trial, what the charges against him were, and the potential sentence he faced if convicted.

Viewed in the light most favorable to the State, the evidence presented at the competency trial and summarized above was sufficient to authorize a rational trier of fact to conclude that Appellant failed to prove by a preponderance of the evidence that he was incompetent to stand trial. See *Sims*, 279 Ga. at 391. Accordingly, this enumeration of error provides no basis for reversal.

*Judgment affirmed in part and vacated in part. All the Justices concur.*

DECIDED MARCH 18, 2013.

*Travis A. Williams, H. Bradford Morris, Jr.,* for appellant.

*Lee Darragh, District Attorney, Kathleen J. Devine, Lindsay H. Burton, Assistant District Attorneys, Samuel S. Olens, Attorney General, Paula K. Smith, Senior Assistant Attorney General, Katherine L. Iannuzzi, Assistant Attorney General,* for appellee.