307 Ga. 763
FINAL COPY

S19A1518. RAMMAGE v. THE STATE.

NAHMIAS, Presiding Justice.

Appellant Johnny Rammage was convicted of malice murder and a firearm offense in connection with the shooting death of Chris Johnson. On appeal, he contends that the trial court erred by not allowing him to introduce evidence of Johnson's prior acts of violence, by declining to give jury instructions on justification and accident, and by admitting evidence of his prior conviction. Appellant also contends that his trial counsel provided ineffective assistance by not objecting to the court's failure to give the jury instructions. After review of the record and the briefs, we affirm.[1]

---

[1] Johnson was killed on August 18, 2005. On October 25, 2005, a Bleckley County grand jury indicted Appellant for malice murder and possession of a firearm by a convicted felon. The charges were severed for trial. Appellant's trial began on October 31, 2006, and the next day the jury found him guilty of the murder charge. Trial then commenced on the severed firearm count, and on the same day the jury found Appellant guilty of that charge too. The trial court sentenced him to serve life in prison for malice murder and a concurrent term of five years for the firearm offense. Appellant filed a timely motion for new trial on December 1, 2006, which he amended with new counsel more than

1. Viewed in the light most favorable to the verdicts, the evidence presented at trial showed the following. Appellant, who is a convicted felon, and his granddaughter were traveling in his pickup truck southbound on the Highway 87 Bypass in Bleckley County. As they stopped at a red light, Johnson pulled up behind the truck. He was driving a white Nissan Maxima with his wife in the passenger seat. As Appellant drove through the intersection, Johnson attempted to pass him, but because there was another vehicle in the lane beside Appellant, Johnson could not get by. They continued to travel down the highway, with Johnson staying close behind Appellant. Eventually, Johnson passed Appellant; as Johnson did so, he showed Appellant his middle finger. Appellant returned the gesture. Johnson then turned onto a side road while Appellant continued down the highway. As Appellant passed Johnson's car, they exchanged middle fingers again.

---

a dozen years later, on January 15, 2019. After a hearing, the trial court denied the motion on April 3, 2019. Appellant filed a timely notice of appeal, and the case was docketed in this Court for the August 2019 term and submitted for decision on the briefs.

After traveling down the side road and briefly stopping in front of a friend's house, Johnson turned onto another road and proceeded to a stop sign near a convenience store. Appellant, who had been planning to go to the store, drove up to the stop sign from the opposite direction about three to five minutes after the initial encounter at the highway stoplight. After Appellant drove through the intersection, Johnson shouted something out of his open window. Appellant stopped his truck beside Johnson's car and asked Johnson what he had said. At that point, the two driver's side doors were facing each other a few feet apart, and both Appellant and Johnson had their windows down.

According to Johnson's wife, the two men exchanged words for less than ten seconds and both of Johnson's hands remained on his steering wheel during that time.[2] Appellant then drew a revolver from the side console of his door, pointed it at Johnson, and shot

---

[2] According to Appellant's granddaughter, the exchange of words lasted about 15 seconds, during which Johnson initially had one hand on his steering wheel and one hand outside his window, and then put the latter hand back inside the car.

Johnson in the face. Appellant's granddaughter ran to the convenience store to call for help, and Appellant followed her into the store. Once inside, the granddaughter said to Appellant, "I saw what you did, why?" Appellant responded, "It was all the hand gesturing and the language. I didn't mean to shoot him." Shortly thereafter, Appellant passed out briefly in the store. Johnson died at the scene.

A responding police officer found a revolver in the front seat of Appellant's truck and a rifle on the floorboard. During a later inventory search of the truck, investigators also recovered a pistol and a shotgun. No weapons were found in Johnson's car.

At trial, the medical examiner who conducted Johnson's autopsy testified that Johnson's cause of death was a gunshot wound to his head. The bullet entered his face between the bridge of his nose and his left eye; evidence of stippling indicated that the shot was fired from 12 to 24 inches away. A firearms expert testified that the bullet recovered from Johnson's head was fired from the revolver found in Appellant's truck seat. The expert also testified that the

revolver's trigger would have required four-and-a-half pounds of pressure to pull in single-action mode and nine-and-three-quarters pounds of pressure to pull in double-action mode.

Appellant's granddaughter testified that Johnson ran Appellant's truck off the road when he tried to pass them after the highway stoplight and that Johnson then stayed on their bumper going down the highway; that during the encounter at the stop sign, Johnson said something to Appellant that "blew him up" before he pulled out his revolver; that after Appellant pointed the revolver at Johnson, Johnson said "you won't shoot me with that g.d. gun"; that Appellant started shaking badly after he pointed the revolver at Johnson; and that Appellant has diabetes, which often causes him to shake when he is afraid or nervous. Appellant testified that, at the stop sign, he argued with Johnson for 30 to 40 seconds and that "[Johnson] told me he would get out and beat my head soft with a baseball bat." Appellant said that although he could have driven away, he was afraid that Johnson would follow him; that he drew his revolver, pointed it at Johnson, and told Johnson that he would

shoot Johnson if Johnson got out of the car in order to prevent Johnson from getting out of the car and harming him and his granddaughter; that while he was pointing the revolver at Johnson, his hand was trembling and the revolver accidentally fired as a result; and that he did not deliberately pull the trigger.

Appellant does not dispute the legal sufficiency of the evidence supporting his convictions. Nevertheless, as is this Court's practice in murder cases, we have reviewed the record and conclude that, when viewed in the light most favorable to the verdicts, the evidence presented at trial and summarized above was sufficient to authorize a rational jury to find Appellant guilty beyond a reasonable doubt of the crimes of which he was convicted. See *Jackson v. Virginia*, 443 U.S. 307, 319 (99 SCt 2781, 61 LE2d 560) (1979). See also *Vega v. State*, 285 Ga. 32, 33 (673 SE2d 223) (2009) ("'It was for the jury to determine the credibility of the witnesses and to resolve any conflicts or inconsistencies in the evidence.'" (citation omitted)).

2. Appellant contends that the trial court abused its discretion by not allowing him to introduce evidence of Johnson's prior acts of

violence against third parties and against Appellant. The trial court ruled that the proffered evidence was inadmissible because Appellant had not made a prima facie showing of justification. We see no error.

Under the old Evidence Code, which applied when this case was tried in 2006, a defendant could present evidence of prior violent acts by the victim against third parties or against the defendant only if he first made a prima facie showing of justification. See *Stobbart v. State*, 272 Ga. 608, 610 (533 SE2d 379) (2000); *Milton v. State*, 245 Ga. 20, 25 (262 SE2d 789) (1980).[3] To establish a prima face case of justification, "the defendant must show that the victim was the aggressor [in the incident being tried], the victim assaulted the defendant, and the defendant was honestly trying to defend himself." *Stobbart*, 272 Ga. at 610 (citation and punctuation omitted). "A person is justified in threatening or using force against another when and to the extent that he or she reasonably believes

---

[3] Under the current Evidence Code, the admission of this sort of victim-character evidence is generally governed by OCGA §§ 24-4-404 and 24-4-405. See *Mohamud v. State*, 297 Ga. 532, 535-536 (773 SE2d 755) (2015).

that such threat or force is necessary to defend himself or herself or a third person against such other's imminent use of unlawful force . . . ." OCGA § 16-3-21 (a).

Pretermitting whether Johnson's driving a few minutes before the shooting qualified as an assault in which he was the aggressor, Appellant did not establish a prima facie case for defending himself or his granddaughter at the time he shot Johnson. See *Cloud v. State*, 290 Ga. 193, 196 (719 SE2d 477) (2011) ("Justification cannot be based on an assault which has ended."). The evidence showed that at the time of the fatal encounter near the convenience store, Appellant had stopped his truck alongside Johnson's car rather than driving by, and Appellant remained free to drive away at any time. Johnson remained in his car without ever brandishing a weapon and with at least one hand on his steering wheel; no weapon was found in his car. In addition, Appellant's granddaughter testified that Appellant told her soon after the shooting that he shot Johnson because of Johnson's hand gestures and language, not because he was afraid that Johnson would harm him or her. And although

8

Appellant claimed at trial that he was afraid because Johnson threatened to get out of his car and hit Appellant with a baseball bat, there was no evidence that Johnson had a baseball bat or ever tried to get out of his car.

There simply was no evidence to support a *reasonable* belief that Appellant needed to use deadly force to defend himself or his granddaughter against the *imminent* threat of use of unlawful force by Johnson. See *Carter v. State*, 285 Ga. 565, 566 (678 SE2d 909) (2009) ("'[T]he doctrine of reasonable fear does not apply to any case of homicide where the danger apprehended is not urgent and pressing, or apparently so, at the time of the killing.'" (citation omitted)); *Lewis v. State*, 270 Ga. 891, 893 (515 SE2d 382) (1999) ("When assessing claims of justification, the subjective fears of a particular defendant are irrelevant."). Accordingly, Appellant did not make a prima facie showing of justification, and the trial court did not abuse its discretion by not allowing him to present evidence of Johnson's prior acts of violence. See, e.g., *Mullins v. State*, 299 Ga. 681, 683-687 (791 SE2d 828) (2016); *Cloud*, 290 Ga. at 195-196;

9

*Quillian v. State*, 279 Ga. 698, 700 (620 SE2d 376) (2005) ("[The defendant] admitted that he never saw a weapon and that the victim was not advancing on him. Therefore, his testimony did not establish a prima facie case of justification." (citation and punctuation omitted)). See also *Garner v. State*, 303 Ga. 788, 790-791 (815 SE2d 36) (2018) (holding that there was no evidence of justification where, among other things, there was no evidence that the victim was reaching for a weapon and the defendant shot the victim after the defendant became angry while speaking with the victim).

3. Appellant contends that the trial court erred by declining to give his requested jury instructions on justification and accident. However, Appellant's counsel did not object to the trial court's failure to give those charges, nor did counsel reserve objections. Thus, Appellant did not preserve this claim for appellate review. See *Dunbar v. State*, 263 Ga. 769, 770 (438 SE2d 356) (1994).[4]

---

[4] This case was tried before the July 1, 2007 effective date of OCGA § 17-8-58, so plain error review of the jury instructions is not available.

10

4. Appellant contends that his trial counsel provided ineffective assistance by not objecting to the trial court's failure to give jury instructions on justification and accident. To succeed on this claim, Appellant must show both that his counsel's performance was professionally deficient and that he was prejudiced as a result. See *Strickland v. Washington,* 466 U.S. 668, 687 (104 SCt 2052, 80 LE2d 674) (1984). "We need not review both elements of this test if the appellant fails to prove one of them." *Stripling v. State,* 304 Ga. 131, 138 (816 SE2d 663) (2018). "Trial counsel's failure to reserve objections to the jury charge falls below an objective standard of reasonableness and therefore constitutes deficient performance only if the charge is objectionable." *Tillman v. Massey,* 281 Ga. 291, 292 (637 SE2d 720) (2006).

Appellant was not entitled to jury instructions on justification or accident. "There must be at least slight evidence produced at trial to authorize a jury instruction, and whether the evidence presented is sufficient to authorize a charge is a question of law." *Wilson v. State,* 279 Ga. 104, 105 (610 SE2d 66) (2005). As discussed above in

11

Division 2, no evidence presented at trial showed that Appellant reasonably believed that he faced imminent unlawful force at the time he shot Johnson, so Appellant was not entitled to a jury instruction on justification. See *Garner*, 303 Ga. at 790-791; *Carter*, 285 Ga. at 566-567.

And because Appellant was not justified in pointing his loaded revolver at Johnson, he was not entitled to a charge on accident. See OCGA § 16-2-2 ("A person shall not be found guilty of any crime committed by misfortune or accident where it satisfactorily appears there was no criminal scheme or undertaking, intention, or criminal negligence."); *Wainwright v. State*, 305 Ga. 63, 71 (823 SE2d 749) (2019) (explaining that when the defendant acts with criminal intent or criminal negligence, a charge on accident is not warranted). Even if Appellant's revolver accidentally discharged because of his trembling hand, he committed aggravated assault by pointing his revolver at Johnson without justification.[5] The evidence

---

[5] A person commits assault when he "[c]ommits an act which places another in reasonable apprehension of immediately receiving a violent injury."

showed that Appellant placed Johnson in reasonable apprehension of being shot: Appellant testified that he pointed the revolver at Johnson and told Johnson that he would shoot Johnson if Johnson got out of the car, and the forensic evidence showed that Johnson was shot in the face at close range. Because Appellant was in the midst of committing an unjustified aggravated assault with a firearm when the alleged accidental discharge occurred, the trial court properly declined to instruct the jury on accident. See *Wainwright*, 305 Ga. at 71. Moreover, even if Appellant was not committing an aggravated assault, his conduct would constitute criminal negligence precluding an accident charge. See, e.g., *New v. State*, 260 Ga. 441, 442 (396 SE2d 486) (1990) ("[A]iming a gun at someone's face is an utter disregard for the safety of that person and constitutes criminal negligence. Therefore, according to OCGA § 16-2-2, the defense of accident is inapplicable.").

---

OCGA § 16-5-20 (a) (2). And a person commits aggravated assault when he assaults someone "[w]ith a deadly weapon" or "without legal justification by discharging a firearm from within a motor vehicle toward a person or persons." OCGA § 16-5-21 (a) (2), (4).

For these reasons, any objection on the ground that the evidence authorized instructions on justification or accident would have been meritless, and Appellant's trial counsel was not professionally deficient for not making such an objection. See *James v. State*, 275 Ga. 387, 389 (565 SE2d 802) (2002).

5. Finally, Appellant contends that the trial court abused its discretion by admitting evidence of his 37-year-old felony conviction under former OCGA § 24-9-84.1 (b), which said that evidence of a defendant's felony conviction older than ten years was not admissible "unless the court determines, in the interest of justice, that the probative value of the conviction supported by specific facts and circumstances substantially outweighs its prejudicial effect." See also *Clay v. State*, 290 Ga. 822, 835-836 (725 SE2d 260) (2012) (enumerating factors that the trial court should consider when determining whether to admit evidence of a prior conviction under OCGA § 24-9-84.1 (b)).[6] Appellant was convicted of burglary in 1969

---

[6] Under the current Evidence Code, impeachment by prior conviction is governed by OCGA § 24-6-609.

14

for breaking into his place of work and stealing around $100 worth of property. The State gave timely notice to Appellant that it intended to introduce evidence of this conviction to impeach him if he elected to testify in the murder phase of his trial.[7] Before Appellant testified at trial, he moved to exclude that evidence, but the trial court denied the motion.

We conclude that even if the evidence of Appellant's old conviction was improperly admitted, its admission was not harmful error.

> The test for determining nonconstitutional harmless error is whether it is highly probable that the error did not contribute to the verdict. In determining whether trial court error was harmless, we review the record de novo and we weigh the evidence as we would expect reasonable jurors to have done so.

*Peoples v. State*, 295 Ga. 44, 55 (757 SE2d 646) (2014) (citations and punctuation omitted).

On cross-examination, the prosecutor asked Appellant if he

---

[7] Appellant's prior felony conviction obviously was admissible as substantive evidence in the second phase of the trial with regard to the severed charge that he possessed a firearm as a convicted felon. See footnote 1 above.

was a convicted felon; he replied, "I am." The prosecutor then had Appellant verify a copy of his conviction and acknowledge that the conviction was for burglary in Bleckley County Superior Court in 1969. Appellant's conviction apparently was not mentioned again during the murder phase of the trial. The trial court included prior felony convictions as part of its general charge on impeachment of witnesses, but Appellant does not argue that the prosecutor made any reference to his conviction during closing arguments (which were not transcribed). See *Jackson v. State*, 306 Ga. 69, 80-81 (829 SE2d 142) (2019). The prosecutor did not need to rely on that bit of impeachment evidence, as the evidence against Appellant was very strong. Moreover, the prior conviction was minimally prejudicial, given its very old age and utter dissimilarity to the charged murder. Accordingly, even if the prior conviction should have been excluded, it is highly probable that its admission did not contribute to the jury's guilty verdict on the murder charge. See *Johnson v. State*, 307 Ga. App. 791, 793 (706 SE2d 150) (2011).

*Judgment affirmed. All the Justices concur.*

16

DECIDED JANUARY 27, 2020.
Murder. Bleckley Superior Court. Before Judge Kaufold.
*Steven M. Harrison*, for appellant.

*Timothy G. Vaughn, District Attorney, Gregory A. Oberry, Assistant District Attorney; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Vanessa T. Sassano, Assistant Attorney General*, for appellee.