### S16A0640. REYNOLDS v. THE STATE.

(792 SE2d 393)

BENHAM, Justice.

Appellant Dewayne Lebron Reynolds appeals his convictions for felony murder and other crimes stemming from the shooting death of

---

Willie Terry Slack.[1] Appellant contends the evidence was insufficient to convict, contends the trial court erred when it failed to give a requested jury instruction, and contends the trial court improperly commented on the evidence. For the reasons set forth below, we conclude these assertions of error are without merit, and so we must affirm; nevertheless, we vacate the judgment in part and remand for the correction of a merger error and resentencing.

1. Appellant contends the evidence was insufficient to convict him because the testimony of his co-defendants was uncorroborated. We disagree.

## Summation of the Evidence

The evidence viewed in a light most favorable to upholding the verdicts shows that on New Year's Eve 2012, appellant, his brother Darnell Mitchell, and his friends Willie Dublin and Terrence Redwine, who was Dublin's brother, were gathered at appellant's house when they decided to go to Slack's house and steal marijuana they believed Slack had stored in a shed. Dublin had a Glock .40 handgun with him that night. The four men went to a vacant lot across from Slack's house, hid in some bushes and waited for Slack to leave. Believing they had been seen by a passerby, the men left the vacant lot and returned to appellant's house. This passerby, who was later identified as Devonte Mostiller, testified he was walking down the street when he saw four men kneeling behind the bushes in the vacant lot. Mostiller said one of the men was wearing a blue and white striped shirt, while the rest of the men were dressed in dark clothing.

---

[1] The crimes occurred on December 31, 2012. On February 21, 2014, a Floyd County grand jury indicted appellant and his cohorts Willie Dublin and Darnell Mitchell on charges of malice murder, felony murder (aggravated assault), aggravated assault with the intent to rob, aggravated assault with a deadly weapon, and possession of a firearm during the commission of a felony. In addition, appellant was indicted on a charge of possession of a firearm by a convicted felon. Appellant was tried alone in October 2014, with the jury returning verdicts of guilt on all charges except malice murder and possession of a firearm by a convicted felon. On November 7, 2014, the trial court sentenced appellant, as a recidivist, to life in prison for felony murder and five years to serve consecutively for possession of a firearm during the commission of a crime. The trial court erroneously merged both aggravated assault with intent to rob and aggravated assault with a deadly weapon into the count of felony murder. See *Thomas v. State*, 292 Ga. 429 (4) (738 SE2d 571) (2013). Appellant filed a motion for new trial on November 14, 2014, and amended the motion on September 9, 2015. On September 22, 2015, the trial court held a hearing on the motion for new trial as amended and denied the motion on September 30, 2015. On October 8, 2015, appellant filed a notice of appeal. Upon receipt of the record, the appeal was docketed to the April 2016 term of this Court and submitted for a decision to be made on the briefs.

After returning to appellant's house, Redwine left and had no further involvement in the events that transpired that night. Appellant, Dublin and Mitchell, however, returned to Slack's house to rob him. There was conflicting evidence as to who shot the victim — Dublin or appellant — needless to say, the victim was shot in the back and died on the porch of Laurel Bullock, who was his next door neighbor. Bullock testified she called police after first hearing a commotion outside and then called the police several more times when she heard a gunshot and the victim's knocking on her door and calling out to her by her nickname "Rel." Because Bullock stayed in her home and away from the doors and windows waiting for police to arrive, she did not see anything that transpired outside her home. Meanwhile, the three men fled after the gunshot was fired. About a week after the shooting, Dublin and Kristina Watson, who was his girlfriend, disposed of the gun by throwing it into a pond.

After the shooting, the police conducted several interviews, including interviews with appellant, Dublin, and Mitchell, who all denied any involvement in the crime. The case went cold until November 2013, at which time the police re-interviewed Watson and she told them about Dublin's encouraging her to lie about his whereabouts on the night of the shooting. Watson also revealed the location of the gun and a diving team from the Federal Bureau of Investigation recovered it. A ballistics expert testified that a shell casing recovered at the scene of the shooting was fired from the weapon recovered by the FBI divers.

In a November 26, 2013 audio-recorded interview, which was played to the jury at trial, appellant admitted to authorities that he was present when Slack was shot and that Dublin had told him to act as a "lookout" right before the shooting took place; but appellant maintained that Dublin shot the victim. During the interview, appellant stated that Dublin rushed the victim, that the victim tried to escape to his neighbor's house, and that the victim was crying out the name "Rel" when he was shot. Appellant said he fled the scene when he heard the gunshot.

### The Testimony of Co-Defendants and Others

At trial, Dublin denied being at the crime scene and said he was at a nearby store at the time. He said he left his gun at appellant's house next to some bushes while he walked to the store and, sometime later that night, appellant gave the gun back to him. Dublin said about a week later, he and Watson disposed of the gun. At trial, Watson corroborated Dublin's testimony that the two disposed of the gun. In addition, Watson testified Dublin confided to her that he was

involved in the shooting, that he brought the gun and gave it to appellant, and that appellant was the shooter. In addition, Watson said Dublin asked her to lie to police about his whereabouts on the night in question.

Mitchell also testified at appellant's trial. He stated that he, appellant, Dublin and Redwine all discussed breaking into the victim's shed and stealing pounds of marijuana which they believed the victim was storing. To that end, around 8:00 that night, they went to a vacant lot across from the victim's house, waiting for the victim to leave. Mitchell said the group left the vacant lot because they believed they had been seen by someone walking down the street. Mitchell said he and the other three men returned to appellant's house and then he left in his girlfriend's car in order to return it to her.[2] Mitchell denied being present when the shooting occurred. The next day at their mother's house, Mitchell said appellant told him, in regard to the shooting, that he had "messed up" and that "he didn't mean to shoot the man." Tonya Dupree, who was Mitchell's girlfriend at the time, also testified at trial. She said that Mitchell did not return her car to her until around 10:30 or 10:45 that night, a time frame which was 15 to 30 minutes after the first 911 calls came in about the shooting. Dupree testified she overheard appellant, Mitchell, and Dublin discussing the shooting the next day and that "all of them" said Dublin had the gun first and then appellant took it. She also testified that both Mitchell and Dublin told her directly that appellant had "messed up."

Judy Cronan Reynolds, who was appellant's girlfriend at the time of the shooting and was his wife by the time of the trial, testified she overheard appellant, Dublin and Mitchell discussing robbing someone, but she did not know who; and she stated she heard Dublin and Mitchell ask appellant to be the lookout. She stated she argued with appellant about going anywhere with Dublin and Mitchell, but that he left after the argument. Judy also stated that appellant was wearing a blue and white striped shirt, Dublin was wearing a black hoodie and sweatpants, and Mitchell was wearing a dark shirt and dark jeans. She says when appellant returned home, she overheard him talking to someone on the phone and that appellant said, "Bro, that man dead." Although Judy assumed appellant was speaking to Mitchell on the phone, she admitted she did not know for certain to

---

[2] Mitchell also testified that Redwine left appellant's house on foot shortly upon returning from the vacant lot. Redwine testified that he was in the vacant lot, but did not know why the group had walked over there. Upon returning to appellant's house, Redwine said he left to go to his girlfriend's home. The police ultimately concluded Redwine was not present for the shooting and did not charge him with any crime.

whom appellant was speaking. Judy said Dublin had a gun at her house that night and that she argued with appellant and Dublin about it because she did not want the gun near her small child. Judy also testified that appellant told her Dublin was the shooter.

This evidence as described above was sufficient to enable the jury to find appellant guilty of the crimes for which he was convicted beyond a reasonable doubt. *Jackson v. Virginia*, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979). Although some of the evidence was conveyed through the testimony of co-defendants, that evidence was properly corroborated. See OCGA § 24-14-8. Indeed, appellant's own statement to police placed him at the scene of the shooting and his statement, combined with the testimony of his then girlfriend Judy, authorized a reasonable factfinder to infer, at the very least, appellant was acting as the lookout during the shooting. As such, even if appellant did not pull the trigger as alleged by his co-defendants' testimony, the evidence was sufficient to convict him as a party to the crimes for which the jury returned verdicts of guilt. See *Williams v. State*, 298 Ga. 208 (2) (a) (779 SE2d 304) (2015); *Washington v. State*, 285 Ga. 541 (1) (678 SE2d 900) (2009).

2. Appellant alleges the trial court erred when it refused to give his requested pattern jury instruction on abandonment. The record shows that appellant did not object to the judge's ruling on his request during the charge conference, nor did he state an objection after the trial court charged the jury. Accordingly, the trial court's failure to give the charge may only be reviewed for plain error. See *White v. State*, 291 Ga. 7 (2) (727 SE2d 109) (2012). An instruction on abandonment did not comport with the evidence because, by appellant's own account of the night's events, he did not leave the scene until after he heard a gunshot and, additionally, there was evidence appellant was acting as a lookout. There is no plain error, and appellant's argument — that the trial court erred when it reasoned a charge on abandonment was unwarranted because conspiracy was not alleged in the indictment — is ultimately inapposite. Nevertheless, pursuant to the right for any reason rule, we sustain the trial court's decision not to charge on abandonment. See *Mullins v. State*, 299 Ga. 681 (2) (791 SE2d 828) (2016).

3. Appellant contends the trial court improperly commented on the evidence in violation of OCGA § 17-8-57 when it gave the following jury instructions concerning rendering a verdict:

> If, after considering the testimony and evidence presented to you, together with the charge of this Court, you should find and believe beyond a reasonable doubt that the

> defendant, in Floyd County, Georgia, did on or about December 31, 2012, commit the offenses as alleged in the indictment, you would be authorized to find the guilt — the defendant guilty. In that event, the form of your verdict would be: We, the jury, find the defendant guilty.
>
> If you do not believe that the defendant is guilty of these offenses or if you have any reasonable doubt as to the defendant's guilt, then it would be your duty to acquit the defendant, in which event the form of your verdict would be: **We, the jury, find the defendant guilty** [sic].

Appellant takes issue with the highlighted text and opines the trial court was improperly commenting on the evidence. Appellant's argument is disingenuous. It is clear the trial court simply left out the word "not" immediately before the word "guilty." Such a verbal inaccuracy does not constitute reversible error. *Williams v. State*, 267 Ga. 771 (2) (a) (482 SE2d 288) (1997). There is no evidence of any jury confusion created by this verbal inaccuracy, in particular because the record shows the jury determined appellant was "not guilty" of malice murder and "not guilty" of possession of a firearm by a convicted felon. This allegation of error is without merit.

4. The trial court merged both aggravated assault (intent to rob) and aggravated assault (with a deadly weapon) into the conviction for felony murder. This was an error as aggravated assault (with intent to rob) does not merge with felony murder predicated on aggravated assault with a deadly weapon. See *Thomas v. State*, 292 Ga. 429 (4) (738 SE2d 571) (2013).[3] See also *Drinkard v. Walker*, 281 Ga. 211 (636 SE2d 530) (2006). Accordingly, the judgment is vacated in part and the case is remanded so that the trial court may enter a sentence on the count of aggravated assault (with intent to rob).

*Judgment affirmed in part and vacated in part, and case remanded with direction. All the Justices concur.*

---

[3] In *Thomas*, although the offense of aggravated assault with intent to rob and the offense of felony murder based on aggravated assault with a deadly weapon were both committed with the same weapon, a gun, this Court held the two offenses did not merge for the purposes of sentencing. This Court noted that Thomas's conviction on the charge of aggravated assault with intent to rob required proof of intent to rob that the State was not required to prove in order to convict him on felony murder predicated on aggravated assault with a deadly weapon. [Cit.] Likewise, the felony murder count required proof that the appellant caused the death of the victim, which the State was not required to prove in order to convict for aggravated assault with an intent to rob. [Cit.] *Flournoy v. State*, 294 Ga. 741 (4) (755 SE2d 777) (2014).

DECIDED OCTOBER 17, 2016.

*Matthew K. Winchester*, for appellant.

*Leigh E. Patterson, District Attorney, Emily G. Johnson, Assistant District Attorney; Samuel S. Olens, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Scott O. Teague, Assistant Attorney General,* for appellee.