302 Ga. 60
FINAL COPY

S17A0822.  DUBLIN v. THE STATE.

PETERSON, Justice.

Willie Dublin appeals his convictions for felony murder and other crimes stemming from the fatal shooting of Terry Slack during an attempted robbery.[1] He raises an ineffective assistance of counsel claim based on his counsel's failure to object to hearsay and what he contends was an improper comment on his pre-trial silence, as well as other enumerations of error related to the admission of additional hearsay and other acts evidence.  We conclude that the alleged hearsay was admissible under the co-conspirator exception to the

---

[1] Slack was killed on December 31, 2012.  In an indictment filed on February 21, 2014, Dublin was charged with malice murder, felony murder, two counts of aggravated assault, and possession of a firearm during the commission of a felony.  After a February 2015 trial, a jury acquitted Dublin of malice murder and found him guilty of the other counts.  On March 17, 2015, the trial court sentenced Dublin to life without the possibility of parole on the felony murder count and five years' imprisonment on the firearm count and merged the two counts of aggravated assault into felony murder.  Trial counsel filed a motion for new trial on March 19, 2015.  An amended motion for new trial was filed by appellate counsel on May 18, 2016.  The trial court denied the motion on July 5, 2016.  Dublin filed a notice of appeal on July 20, 2016, and the case was docketed to the term beginning in April 2017 and submitted for a decision on the briefs.

hearsay rule. Dublin has not shown that trial counsel's failure to object to a detective's comment on his silence prejudiced his defense. And we find that the trial court did not abuse its discretion in denying a mistrial after a witness alluded to some prior bad acts. We also reject Dublin's argument that the evidence was insufficient to support his convictions and we therefore affirm them. We vacate the judgment in part, however, as the trial court erred by merging the count of aggravated assault with intent to rob into the offense of felony murder, and we remand for the trial court to sentence Dublin on that aggravated assault count.

The evidence presented at trial showed that Dublin, co-defendants Darnell Mitchell and Dewayne Reynolds, and others gathered at Reynolds's home to celebrate New Year's Eve on December 31, 2012. Dublin admittedly had a Glock handgun with him that night. Mitchell testified that he, Reynolds, and Dublin discussed robbing Slack, who lived one street away and was believed to have marijuana in his shed. Reynolds's live-in girlfriend, Judy Cronan (his wife by the time of trial), testified that she overheard the three men talking on her porch that night and "they were talking about doing a lick or a hit or something like that." Dublin's brother, Terrence Redwine, told police that he was with the

2

other three men that evening and admitted to hearing them making plans to rob someone. Slack was fatally shot in the back that night, but there was conflicting evidence at trial as to who pulled the trigger.

A neighbor, Davonte Mostiller, testified that he saw four people in an abandoned lot across from Slack's house as he walked home from the store that night. He said he could not tell whether they were men or women because it was dark. He observed that one was wearing a blue and white striped collared shirt. Evidence at trial showed that Dublin and Mitchell were wearing dark clothing that night, and Reynolds wore a blue and white striped collared shirt. Redwine testified that he, Dublin, Mitchell, and Reynolds went to the vacant lot that night — Redwine testified that he did not know why they were there — then turned back to Reynolds's house after about 10 or 15 minutes.

Mitchell and Reynolds[2] testified at Dublin's trial. Mitchell testified that he proceeded to Slack's house with Dublin and Reynolds and lingered in the vacant lot for about 10 minutes, but they turned back after they believed they

---

[2] Prior to Dublin's trial, Reynolds was tried and convicted of felony murder and other crimes and sentenced to life in prison for the felony murder and five years to serve consecutively for possession of a firearm during the commission of a crime. We affirmed Reynolds's convictions. See Reynolds v. State, 299 Ga. 781 (792 SE2d 393) (2016). The record suggests that Mitchell's case had not been resolved at the time of Dublin's trial.

were observed by Mostiller, and that he left Reynolds's house thereafter. Mitchell said he later spoke with Reynolds, who said, "I didn't mean to shoot him." In his trial testimony, Reynolds denied going to Slack's house that night, but the jury heard a recording of a police interview in which Reynolds admitted that he, Mitchell, and Dublin went to Slack's house. In that interview, Reynolds claimed Dublin was the shooter.

Cronan (Reynolds's wife) testified that on the day after the shooting she overheard Dublin, Mitchell, and Reynolds discussing Slack's death, including that they did not intend to kill him. Mitchell's girlfriend, Tonya Dupree, also testified that at some point she overheard Dublin, Mitchell, and Reynolds talking about the shooting. Based on her eavesdropping, Dupree testified she understood "they was trying to rob him, and I guess a struggle came out or whatever, and they said Willie Dublin froze up. He wouldn't shoot when they told him to shoot or whatever, so Dewayne Reynolds snatched the gun, and he shot."

Dublin's girlfriend, Kristina Watson, initially rebuffed investigators' attempt to speak with her. She ultimately cooperated, however, leading investigators to a pond where she and Dublin had disposed of the gun (which

4

she had given him). Watson testified at trial that Dublin asked her to lie to the police for him regarding the events of New Year's Eve. She testified that she heard Reynolds confess to shooting Slack and that Dublin told her that he had given Reynolds the gun. She also testified that she heard Mitchell, Reynolds, and Dublin discussing their alibis.

Dublin testified at trial. He acknowledged being at Reynolds's home on New Year's Eve. He testified that at some point in the evening he followed Reynolds to Slack's house and witnessed Reynolds pull the trigger of a gun while standing no more than five or six feet away from Slack, then hand Dublin the gun. But Dublin testified that he did not know of any plan for a robbery and was surprised by the shooting. Dublin admitted that the gun used to shoot Slack was his, that he later disposed of it, and that he had Watson lie for him.

Convicted of felony murder and other crimes, Dublin argued in an amended motion for new trial that the trial court erred by admitting hearsay testimony by Dupree and by not declaring a mistrial when Reynolds testified as to other bad acts by Dublin, and that trial counsel was ineffective for failing to object to certain hearsay testimony or a detective's remark that Dublin had declined to speak with police. The trial court denied the motion, and this appeal

5

followed.

1. Dublin argues that his trial counsel was ineffective for failing to object to inadmissible hearsay from Kristina Watson and Judy Cronan. We conclude that any objection to this testimony would have been futile.

In order to establish that trial counsel was ineffective, Dublin must show both that trial counsel's performance was deficient, and that the deficient performance prejudiced his defense. Strickland v. Washington, 466 U.S. 668, 687 (104 SCt 2052, 80 LE2d 674) (1984). "The failure to pursue a futile objection does not amount to ineffective assistance." Ventura v. State, 284 Ga. 215, 218 (4) (663 SE2d 149) (2008). "We accept the trial court's factual findings and credibility determinations unless clearly erroneous, but we independently apply the legal principles to the facts." Robinson v. State, 277 Ga. 75, 76 (586 SE2d 313) (2003) (citation and punctuation omitted).

Dublin argues that counsel should have objected to Cronan's testimony that she overheard certain statements both on New Year's Eve and the following day. She testified that she overheard Dublin, Mitchell, and Reynolds planning a robbery the night of the shooting. Cronan also testified that the following day she overheard Dublin, Mitchell, and Reynolds discussing Slack's death, and

6

encouraging each other "not to say anything." Dublin also argues that trial counsel should have objected to testimony by Watson that she overheard the men discussing possible alibis the day after the shooting. In denying Dublin's motion for new trial, the trial court ruled that the testimony of the two women was admissible because the statements fell within the co-conspirator exception to the hearsay rule and the witnesses could identify the people they overheard speaking.

Dublin argues that the testimony of neither Watson nor Cronan falls under the hearsay exception because the State failed to establish a conspiracy between Dublin and his co-defendants independent of the alleged co-conspirator declarations. Under OCGA § 24-8-801 (d) (2) (E), a statement by a defendant's co-conspirator made "during the course and in furtherance of the conspiracy, including a statement made during the concealment phase of a conspiracy[,]" is not excluded by the hearsay rule when offered against the defendant. A conspiracy need not be charged in order for the exception to apply. Id. For evidence to be admissible under this rule, the government must prove the existence of a conspiracy by a preponderance of the evidence. United States v.

7

Hasner, 340 F3d 1261, 1274 (11th Cir. 2003).[3] In determining the existence of a conspiracy, the trial court may consider both the co-conspirator's statements and independent external evidence, although the co-conspirator's statement alone does not suffice.  Id.  In considering whether a conspiracy was established for purposes of the rule, we do not require that the conspiracy be proven prior to the admission of the evidence in question, but only that the conspiracy was proven at trial.  Id. at 1274-1275.[4]  Here, the State established by a preponderance that Dublin, Reynolds, and Mitchell conspired to rob Slack, and so Dublin's argument fails.

Dublin also argues that the testimony of Watson and Cronan was inadmissible as unreliable because the women did not specify who said what in

---

[3] Where a provision of our new Evidence Code is borrowed from the Federal Rules of Evidence, we look to decisions of the federal appellate courts construing and applying the Federal Rules, especially the decisions of the Supreme Court of the United States and the Eleventh Circuit.  See Olds v. State, 299 Ga. 65, 69 (2) (786 SE2d 633) (2016).  Although OCGA § 24-8-801 (d) (2) (E) contains some language the federal rule does not, the additional language in the Georgia rule is drawn from federal case law.  See Ronald L. Carlson & Michael Scott Carlson, Carlson on Evidence 473 (5th ed. 2016).

[4] Even under the old Evidence Code, we did not require the State to make out a prima facie case of conspiracy prior to the introduction of the statements, notwithstanding that the rule explicitly provided that co-conspirator declarations shall be admissible "[a]fter the fact of conspiracy is proved[.]"  See Williams v. State, 293 Ga. 750, 753 (2) (749 SE2d 693) (2013).

the conversations they purportedly overheard. Dublin quotes a United States Supreme Court opinion construing the Confrontation Clause for the proposition that "hearsay evidence used to convict a defendant must possess indicia of reliability by virtue of its inherent trustworthiness, not by reference to other evidence at trial." Lilly v. Virginia, 527 U.S. 116, 138 (119 SCt 1887, 144 LE2d 117) (1999) (citation and punctuation omitted). But to the extent that any of the Lilly analysis has survived subsequent decisions, see Crawford v.Washington, 541 U.S. 36 (124 SCt 1354, 158 LE2d 177) (2004), its requirement of reliability certainly does not apply to nontestimonial statements such as those made in furtherance of a conspiracy. See McClendon v. State, 299 Ga. 611, 617-618 (4) (b) (791 SE2d 69) (2016). Because Dublin's arguments as to the admissibility of Watson's and Cronan's testimony are unavailing, his ineffectiveness claim based on trial counsel's failure to object to that testimony fails. See Ventura, 284 Ga. at 218 (4).

2. Relatedly, Dublin also argues that the trial court erred by allowing Tonya Dupree to give hearsay testimony over trial counsel's objection. Dublin contends that the admission of this testimony was error because the State failed to establish a conspiracy independent of the alleged co-conspirator declarations

9

and because the testimony lacked sufficient indicia of reliability due to Dupree's failure to identify who made the statements in question.[5] Dublin's first argument is foreclosed by our conclusion above that the State did prove a conspiracy by a preponderance of the evidence. And, again, the State need not show any particular reliability of the declarants' statements for Confrontation Clause purposes.

3. Dublin argues that his trial counsel also was ineffective for failing to object to a detective's testimony that Dublin did not show a willingness to talk to police. We disagree.

Detective Jeff Richerson testified that he attempted to speak with Watson, Dublin's girlfriend, a few days after the shooting. Asked whether Watson wanted to speak with him, Richerson testified without objection, "No, not at first. Myself and the other investigator went down to Willie Dublin's house on Maple and tried to talk with him and her, and neither one of them showed any kind of willingness to talk with us, so we left the house." Dublin argued in his

---

[5] To the extent that a conclusory clause in a sentence of Dublin's opening appellate brief raises a question as to whether the statements to which Dupree testified were made "during the course and in furtherance of the conspiracy" under OCGA § 24-8-801 (d) (2) (E), Dublin has failed to make any argument or offer any authority on that point, and, therefore, we do not consider any such argument. See Supreme Court Rule 22.

amended motion for new trial and contends on appeal that this amounted to a violation of the rule articulated in Mallory v. State, 261 Ga. 625 (409 SE2d 839) (1991), overruled on other grounds by Clark v. State, 271 Ga. 6, 10 (5) (515 SE2d 155) (1999). We held in Mallory that it is impermissible to comment on a criminal defendant's silence or failure to come forward, even where the defendant's silence was not induced by Miranda warnings and he takes the stand in his own defense. Id. at 630 (5). To date we have declined to consider the continuing validity of Mallory under the new Evidence Code. See Bradford v. State, 299 Ga. 880, 886 (7) n. 7 (792 SE2d 684) (2016).[6]

We do not find it necessary to examine the viability of Mallory here, either. In order to show prejudice from counsel's deficient performance, the defendant must show that a reasonable probability exists that, but for trial counsel's errors, the outcome of the proceeding would have been different. Strickland, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. Even if counsel's failure to

---

[6] Mallory was based on former OCGA § 24-3-36, which provided that "[a]cquiescence or silence . . . may amount to an admission," as well as the Court's conclusion, prior to the legislature's adoption of OCGA § 24-4-403, that a comment on a defendant's silence is "far more prejudicial than probative." 261 Ga. at 630 (5).

object to the testimony of Detective Richerson in question amounted to deficient performance, Dublin has not shown prejudice from his counsel's failure to raise such an objection.

Dublin argues that the improper comment contributed to the guilty verdict because the evidence was "conflicted as to the identity and participation of the co-defendants[.]" But Dublin was charged with felony murder predicated on the crime of aggravated assault, and "a defendant need not personally possess a weapon or fire a shot to be found guilty as a party to an aggravated assault, if the evidence shows that he intentionally aided or abetted in the commission of the crime." Herrington v. State, 300 Ga. 149, 150 (1) (b) (794 SE2d 145) (2016) (citing OCGA § 16-2-20 (b) (3)) (punctuation omitted). "Whether a person was a party to a crime can be inferred from his presence, companionship, and conduct before and after the crime was committed." Id. (citation and punctuation omitted). Moreover, a defendant may be convicted of possession of a firearm during the commission of a felony even if he possesses the firearm only constructively as a party to the crime. See Braithwaite v. State, 275 Ga. 884, 888 (8) (572 SE2d 612) (2002).

Here, multiple witnesses said they heard Dublin discuss with others the

possibility of robbing Slack. Although Mostiller was not able to identify the men he saw in the vacant lot across from Slack's house, Redwine and Mitchell both placed Dublin at the vacant lot. Reynolds told police that he and Dublin went to Slack's house that night, and Dublin admitted as much. The evidence showed at least one member of the group pointed a gun at Slack with the intent to rob him: Reynolds told police that Dublin was the shooter, while Watson and Mitchell testified that they heard Reynolds confess to shooting Slack, and Dupree testified that, based on her eavesdropping on Dublin and his co-conspirators, she understood that Reynolds snatched the gun from Dublin and shot Slack. Although the evidence was conflicting as to whether Dublin was the shooter, Dublin admitted that the gun used to shoot Slack was his, that he later disposed of it, and that he asked Watson to lie for him. Dublin thus has not shown a reasonable probability that Richerson's remark affected the outcome of the trial, particularly given that it was an isolated statement made in the context of questioning about cooperation of Dublin's girlfriend, not that of Dublin. See Hernandez v. State, 299 Ga. 796, 800 (4) (792 SE2d 373) (2016) (given collective weight of evidence refuting appellant's claim of self-defense, he cannot demonstrate reasonable probability outcome of trial would have been

different but for trial counsel's failure to object under <u>Mallory</u> and other alleged deficiency); <u>Thomas v. State</u>, 284 Ga. 647, 649 (3) (a) (670 SE2d 421) (2008) (no error in denying ineffective assistance of counsel claim based on counsel's failure to object under <u>Mallory</u> where there was overwhelming evidence, including eyewitness accounts, that appellant shot the unarmed victim).

4. Dublin argues that the trial court erred by not declaring a mistrial when a co-defendant testified to inadmissible other acts evidence. We disagree.

Reynolds testified on direct examination as follows:

> Q: So you never heard Willie or Darnell talk about robbing someone?
> A: I have heard some — them say something about robbing somebody on occasions, times before, but I never paid it no attention.
> Q: Okay. On December 31st, did you hear them talk about robbing anybody?
> A: I don't think I did.

The trial court then sua sponte instructed the jury to disregard "that last testimony," telling the jury that it should "disregard . . . completely . . . any events other than on December 31." After Reynolds concluded his testimony, trial counsel requested a mistrial, and the trial court denied the request. Dublin argues on appeal that the trial court should have granted a mistrial because the

14

testimony improperly commented on Dublin's character.

"The refusal to grant a mistrial based on a prejudicial comment lies within the discretion of the trial court, and this Court will not interfere with that discretion on appeal in the absence of a manifest abuse." Turner v. State, 299 Ga. 720, 723 (5) (791 SE2d 791) (2016) (citation omitted). "Moreover, a new trial will not be granted unless it is clear that the trial court's curative instruction failed to eliminate the effect of the prejudicial comment." Id. (citation omitted). The trial court's instruction in this case was sufficient to protect Dublin from any prejudicial effect of Reynolds's vague, nonresponsive allusion to prior discussions of robbing someone. Assuming that Dublin's motion for a mistrial was not made too late,[7] the trial court did not abuse its discretion in failing to grant appellant's motion for a mistrial. See Williams v. State, 301 Ga. 712, 717 (4) (804 SE2d 31) (2017) (no abuse of discretion in denying mistrial where State asked defendant if he was aware that a friend attempted to bribe a juror; the judge told the jury to ignore the question and explained it had excused the juror

---

[7] "A motion for mistrial must be promptly made as soon as the party is aware of the matter giving rise to the motion." Ragan v. State, 299 Ga. 828, 833 (3) (792 SE2d 342) (2016) (motion for mistrial untimely where made only after the State concluded direct examination during which photographs in question were admitted) (citation and punctuation omitted).

because she had been in the courtroom when she was supposed to be in the jury room); Turner, 299 Ga. at 722-723 (5) (no abuse of discretion in denying mistrial where witness testified that about a week before the shooting with which defendant was charged she saw defendant smoking marijuana); Rafi v. State, 289 Ga. 716, 720 (4) (715 SE2d 113) (2011) (trial court did not abuse its discretion in denying motion for mistrial when witness referred to defendant as drug dealer).

5. Finally, Dublin argues that, setting aside what he claims is inadmissible hearsay, the State did not introduce sufficient evidence to support his convictions. As detailed in Divisions 1 and 2, we reject his claims that the State was permitted to present inadmissible hearsay evidence. In any event, in reviewing the sufficiency of the evidence, we "consider all of the evidence admitted by the trial court, regardless of whether that evidence was admitted erroneously." Cowart v. State, 294 Ga. 333, 343 (6) (751 SE2d 399) (2013) (citation and punctuation omitted). And as detailed above, the trial evidence was legally sufficient to authorize a rational trier of fact to find beyond a reasonable doubt that Dublin was guilty of felony murder, aggravated assault with intent to rob, aggravated assault with a firearm, and possession of a firearm

16

during the commission of a felony. See Jackson v. Virginia, 443 U.S. 307, 319 (99 SCt 2781, 61 LE2d 560) (1979).

6. The trial court erred in merging both Count 3 (aggravated assault with intent to rob) and Count 4 (aggravated assault with a deadly weapon) into the felony murder account. We held in the case of Dublin's co-defendant, Reynolds, that this same handling of the counts at sentencing was error as to Reynolds. See Reynolds, 299 Ga. at 786 (4). The offense of aggravated assault with intent to rob does not merge into felony murder predicated on aggravated assault with a deadly weapon, as

> [Dublin]'s conviction on the charge of aggravated assault with intent to rob required proof of intent to rob that the State was not required to prove in order to convict him on felony murder predicated on aggravated assault with a deadly weapon. Likewise, the felony murder count required proof that the appellant caused the death of the victim, which the State was not required to prove in order to convict for aggravated assault with an intent to rob.

Id. at 786 (4) n. 3 (citations omitted). We therefore vacate the judgment in part and remand for the trial court to enter a sentence on the count of aggravated assault with intent to rob. Id. at 786 (4).

Judgment affirmed in part and vacated in part, and case remanded with direction. All the Justices concur.

Decided September 13, 2017.

Murder. Floyd Superior Court. Before Judge Niedrach.

James K. Luttrell, for appellant.

Leigh E. Patterson, District Attorney, Emily G. Johnson, Assistant District Attorney; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Scott O. Teague, Assistant Attorney General, for appellee.